Jason M. Drangel (JMD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AES 7715)
asands@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2410
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391

Attorneys for Plaintiff
ROVIO ENTERTAINMENT LTD.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROVIO ENTERTAINMENT LTD.<br>*Plaintiff*<br><br>v.<br><br>ZY WHOLESALE, INC.; HCC WHOLESALES, INC.; ZCY TRADING CORP.; H.M. IMPORT USA CORP.; ZONE IMPORT CORP.; CHENGLAN HU d/b/a ZY WHOLESALE, INC.; GUAN JUN ZHANG d/b/a HCC WHOLESALES, INC. and ZCY TRADING CORP.; HUA FEI ZHANG; and JUN WU ZHANG d/b/a H.M. IMPORT USA CORP.<br>*Defendants* | **CIVIL ACTION No. 1:14-cv-2835**<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff, Rovio Entertainment Ltd ("Rovio" or "Plaintiff"), a limited liability company

organized in Finland, by and through its undersigned counsel, alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for: copyright infringement of federally registered

copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.; for trademark

infringement of a federally registered trademark in violation of § 32 of the Federal Trademark

(Lanham) Act, 15 U.S.C. §§ 1051 et seq.; for counterfeiting of federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c); for false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and for related state and common law claims.  Plaintiff seeks injunctive relief, an accounting, compensatory damages and/or statutory damages, treble damages, attorney's fees and costs, and such other relief as the Court deems proper.

## JURISDICTION AND VENUE

2.    This Court has Federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq. and the Copyright Act, 17 U.S.C. §§ 101 et seq.; pursuant to 15 U.S.C. § 1121; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition; as well as pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a).

3.    Venue is proper, inter alia, pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this district and, on information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and has caused damage to Plaintiff in this district.

4.    Personal jurisdiction exists over Defendants because, upon information and belief, Defendants conduct business in New York and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play

and due process.

## THE PARTIES

5.     Plaintiff Rovio Entertainment Ltd. is a private limited liability company organized under Finnish law, having a principal place of business at Keilaranta 17 C, FI-02150 Espoo, Finland.

6.     Upon information and belief, Defendant ZY Wholesale, Inc. ("ZY") is a corporation, organized under the laws of New York, having its process address at 1177 Flushing Avenue, Brooklyn, NY 11237 and its principal place of business at 1717B Troutman Street, Ridgewood, New York 11385 (hereinafter "Ridgewood Warehouse").

7.     Upon information and belief, Defendant HCC Wholesales, Inc. ("HCC") is an inactive corporation, organized under the laws of New York, which was dissolved on September 13, 2012, with its process address at 37-58 89th Street, #3C, Jackson Heights, NY 11372 and its principal place of business at the Ridgewood Warehouse.

8.     Upon information and belief, Defendant ZCY Trading Corp. ("ZCY") is a corporation, organized under the laws of New York, having its process address and its principal place of business at the Ridgewood Warehouse.

9.     Upon information and belief, Defendant H.M. Import USA Corp. ("H.M.") is an inactive corporation, organized under the laws of New York, which was dissolved on September 8, 2014, with its process address and principal place of business at the Ridgewood Warehouse.

10.     Upon information and belief, Defendant Zone Import Corp. ("Zone Import") is an inactive corporation, organized under the laws of New York, which was dissolved on October 7, 2014, with its process address at 1177 Flushing Avenue, Brooklyn, NY 11237 and a place of business at the Ridgewood Warehouse.

11.     Defendants ZY, HCC, ZCY, H.M. and Zone Import are hereinafter collectively referred to as "Corporate Defendants".

12.     Upon information and belief, Defendant Chenglan Hu d/b/a ZY Wholesale, Inc. ("Hu"), is an individual residing at 4564 204th Street, Bayside, New York 11361 ("Bayside Residence"), and having a principal place of business at the Ridgewood Warehouse.

13.     Upon information and belief, Defendant Guan Jun Zhang d/b/a HCC Wholesales, Inc. and ZCY Trading Corp. ("G. Zhang"), is an individual residing at the Bayside Residence, and having a principal place of business at the Ridgewood Warehouse.

14.     Upon information and belief, Defendant Hua Fei Zhang ("H. Zhang") is an individual residing at the Bayside Residence, and having a principal place of business at the Ridgewood Warehouse.

15.     Upon information and belief, Defendant Jun Wu Zhang d/b/a H.M. Import USA Corp. ("J. Zhang") is an individual residing at the Bayside Residence, and having a principal place of business at the Ridgewood Warehouse.

16.     Defendants Hu, G. Zhang, H. Zhang and J. Zhang are hereinafter collectively referred to as "Individual Defendants".

17.     Corporate Defendants and Individual Defendants are hereinafter collectively referred to as "Defendants".

18.     Upon information and belief, the Individual Defendants are a family (i.e., Hu and H. Zhang are married and G. Zhang and J. Zhang are their sons), and the Corporate Defendants are and/or were closely-held, family-run businesses.

19.     Individual Defendants were officers, directors, shareholders and/or owners of Corporate Defendants and the unlawful acts of Corporate Defendants, as alleged herein, were

performed within the course and scope of such positions.  Defendants enriched themselves by fraudulent and illegal conduct as alleged herein, while Plaintiff suffered enormous financial injury.

20.     Upon information and belief, adherence to the fiction of the existence of Individual Defendants as separate and distinct from Corporate Defendants, would permit an abuse of corporate privilege and would permit an injustice in that the Individual Defendants would succeed in avoiding legally incurred liabilities while maintaining the benefits of the corporate status.

21.     Upon information and belief since the time of their creation, now, and all times relevant to this Complaint such a unity of interest and ownership existed between Individual Defendants and Corporate Defendants, as well as between the Corporate Defendants themselves, such that separate personalities did not and do not in reality exist.

## GENERAL ALLEGATIONS

**Plaintiff Rovio and its Well-Known Angry Birds Game and Licensed Products**

22.      Rovio is an entertainment media company established in 2003 and is the creator of the globally successful Angry Birds franchise.  "Angry Birds" is a puzzle video game first released in December 2009 for Apple iOS which became an international phenomenon within a few months of its release.

23.     In the games, players use a slingshot to launch birds at pigs stationed on or within various structures, with the intent of destroying all the pigs on the playfield.  As players advance through the game, new birds appear, some with special abilities that can be activated by the player.  Since its release, Rovio has supported the Angry Birds games with numerous free updates that add additional game content as well as releasing multiple new versions of the game

for multiple platforms.

24.     To date, the Angry Birds games have been downloaded over 2 billion times (2,000,000,000) across all platforms, including both regular and special editions (i.e., Classic, Seasons, Rio, Space, Star Wars, etc.), including over 1 billion (1,000,000,000) in 2012 alone. Angry Birds is the number one paid app of all time.

25.     There are approximately two hundred million (200,000,000) active monthly users across all platforms.  Players log more than 1 million (1,000,000) hours of game time each day on the iOS version of the Angry Birds game and 3.33 million (3,330,000) hours per day across all platforms.

26.     In addition, Rovio has won multiple awards for various versions of the Angry Birds games.  In February 2010, Angry Birds was a nominee for the "Best Casual Game" award at the 6th annual International Mobile Gaming Awards in Barcelona, Spain.  In June of 2010, Macworld named Angry Birds as the winner of the 2010 Macworld Award for "Best iPhone Entertainment & Lifestyle App".  In July 2012, Angry Birds won "Best New Download IP" award at the Develop Awards in Brighton.  In September 2010, IGN named Angry Birds as the fourth best iPhone game of all time.  In April 2011, Angry Birds won both the "Best Game App" and "App of the Year" at the UK Appy Awards.  At the 15th edition of the Webby Awards, Angry Birds was awarded "Best Game for Handheld Devices".  In April 2012, Angry Birds again won the "Best Game App" award at the Appy Awards.

27.     Rovio and its Angry Birds franchise have received widespread press and media coverage.  News stories, reports, reviews, features, press releases and blog posts have appeared in worldwide print and online publications such as: USA Today, TIME, The New York Times, The Washington Post, Forbes, The Los Angeles Times, The Chicago Tribune, The Associated

Press, Reuters, and the Huffington Post, among many others.

28.     The popularity of the Angry Birds games led to an expansion of the Angry Birds franchise to other business areas including, but not limited to: the development and sale of merchandise featuring its characters; the launch of the ToonsTV channel, Rovio's video entertainment platform for the mobile generation airing the Angry Birds Toons television series, which surpassed more than 1 billion (1,000,000,000) views in its first seven months since its release in March of 2013; and plans for a feature film which is due to be released in July of 2016.

29.     Rovio has created several key strategic partnerships with over five hundred (500) licensees ("Authorized Licensees") worldwide to develop an extensive and successful global licensing program for merchandise, including more than forty thousand (40,000) products featuring its characters and using and/or sold in connection with Rovio's federally registered trademarks and copyrights, which include innovative product lines across multiple consumer products categories ("Authentic Products").

30.     In February of 2011, Rovio won "Property of the Year" for Angry Birds and "Game of the Year" for Authorized Licensee, Mattel's board game, "Angry Birds: Knock on Wood" at Toy of the Year Awards.  In June of 2012, the International Licensing Industry Merchandisers' Association (LIMA) selected Angry Birds as the "Overall Best Licensed Program of the Year" and the "Best Character/Toy Brand Program of the Year" award in the Character/Toy Brand segment.  One of Rovio's Authorized Licensees, Commonwealth Toy & Novelty Co., was also awarded "Best Character/Toy Brand Licensee of the Year-Hard Goods" for its Angry Birds toys.

31.     While Plaintiff has gained significant common law trademark and other rights in its trademarks and Authentic Products through its extensive use, advertising and promotion,

Plaintiff has also protected its valuable rights by filing for and obtaining federal trademark registrations.

32.　　Plaintiff is the owner of federally registered trademarks, including but not limited to: U.S. Trademark Registration Nos. 4,200,545, 4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, U.S. Trademark Registration Nos. 4,252,003, 4,145,113 and 3,988,064 for  for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, U.S. Trademark No. 4,493,055 for  for a wide variety of goods in Classes 3, 5, 7, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41, 43, and 45, and U.S. Trademark No. 4,493,031 for , U.S. Trademark No. 4,489,982 for , U.S. Trademark No, 4,489,981 for , U.S. Trademark No. 4,489,980 for , U.S. Trademark No. 4,489,979 for , U.S. Trademark No. 4,486,763 for , and U.S. Trademark No. 4,486,762 for , for a wide variety of goods in Classes 3, 5, 9, 14, 15, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41, and 43 (collectively, "Marks").  A true and correct copy of the registrations for the Marks are attached hereto as **Exhibit A** and incorporated herein by reference.

33.　　The Marks are currently in use in commerce for the Authentic Products, which include sticker albums, stickers, spinning tops, plush toys, toys, and key chains (the products at issue in this action), and the constructive date of first use based on Rovio's federal trademark registrations for its Marks is no later than March 31, 2011.

34.　　Plaintiff also owns both registered and unregistered copyrights in and related to the games, game characters and Authentic Products, which protect the various proprietary

characters originated in the game and extended through its line of Authentic Products.  The line is updated from time to time to add new designs and products.

35.     Plaintiff has protected its valuable rights by filing and obtaining United States copyright registrations in and relating to many of its characters and Authentic Products.  For example, Plaintiff owns the following relevant certificates of registration:  VA1794919, VA1769078, VA1769080, VA1776992, VA1776995, VA1777195, VA1778702, VA1778703, and VA1778705 as well as numerous common law copyrights (hereinafter collectively referred to as the "Copyright Works").   True and correct copies of the foregoing certificates of registration are collectively attached hereto as **Exhibit B** and incorporated herein by reference.

36.     Rovio has gone to great lengths to protect its interests in and to its Marks and Copyright Works.  No one other than Rovio and its Authorized Licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Marks or Copyright Works without the express written permission of Rovio.

37.     As a result of Plaintiff's efforts, the quality of its Authentic Products, its promotions, extensive press and media coverage and word of mouth buzz, Plaintiff's Marks, Copyright Works and Authentic Products have become prominently placed in the minds of the public.  Members of the public have become familiar with Plaintiff's Marks, Copyright Works and Authentic Products, and have come to recognize the Marks, Copyright Works and Authentic Products and associate them exclusively with Plaintiff.   Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association.   Indeed, the Marks, Copyright Works and Authentic Products are famous in the United States, among other countries.

**Defendants' Wrongful and Infringing Conduct**

38.     Particularly in light of the success of Plaintiff, Plaintiff's Angry Birds games and Authentic Products, as well as the reputation they have gained, Plaintiff and Plaintiff's Angry Birds games and Authentic Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Marks, Copyright Works and Authentic Products.

39.     Plaintiff investigates and enforces against such activity, and through such efforts, learned of Defendants' actions which vary and include: copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling sticker albums, stickers, spinning tops, plush toys, toys, and key chains bearing one or more of Plaintiff's Marks and/or Copyright Works, and/or products in packaging and/or containing labels and/or hang tags bearing Plaintiff's Marks and/or bearing marks and/or artwork that are confusingly or substantially similar to Plaintiff's Marks and/or Copyright Works, and/or sticker albums, stickers, spinning tops, plush toys, toys, and key chains that are identical or confusingly or substantially similar to Plaintiff's Authentic Products (collectively hereinafter referred to as, "Infringing Products" or "Counterfeit Products") to U.S. consumers.

40.     On or about December 20, 2011 counsel for Plaintiff received information from the Department of Homeland Security – Immigrations and Customs Enforcement ("DHS-ICE") through Allegiance Protection Group, Inc., investigators hired by Plaintiff's counsel ("Plaintiff's Investigators") that Defendants were importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling, Counterfeit Products.  On the same date, Plaintiff's counsel, along with DHS-ICE and Plaintiff's Investigators, visited ZY's warehouse, wholesale store and showroom, located at the Ridgewood Warehouse.

41.     DHS-ICE seized fourteen thousand, nine hundred, fifty-nine (14,959) Infringing Products from ZY at the Ridgewood Warehouse on that date ("HSI Seizure").  True and correct photographs of the Counterfeit Products available at and seized from ZY's warehouse, wholesale store and showroom on December 20, 2011 are attached hereto as **Exhibit C**.

42.     All of the Infringing Products were confirmed by Plaintiff to be counterfeit and infringe Plaintiff's Marks and/or Copyright Works.

43.     Thereafter, on or about January 10, 2012, Plaintiff received a Notice of Seizure letter from U.S. Customs and Border Protection ("CBP"), indicating that CBP seized a shipment of seven thousand, five hundred, sixty (7,560) Infringing Products (comprised of 3,600 plush toys and 3,960 figurines) that was destined to be delivered to HCC Wholesales, Inc. ("CBP Seizure"), of which G. Zhang was the President and sole shareholder.  A true and correct copy of the Notice of Seizure is attached hereto as **Exhibit D** and incorporated herein by reference.

44.     Plaintiff sent a cease and desist letter to HCC Wholesales, Inc. on or about January 13, 2012 ("C&D").  A true and correct copy of the C&D, along with the envelope, is attached hereto as **Exhibit E**.

45.     Due in part to Defendants' infringing activities as outlined above, on February 4, 2013, Defendants, with the exception of HCC,  were indicted for numerous offenses, including, in relevant part, Conspiracy to Commit Copyright Infringement and Traffic in Counterfeit Goods and Criminal Copyright Infringement, among other offenses, in *United States v. Hu, et al.*, Case No.  1:13-cr-00068-DLI  (E.D.N.Y.)  ("Criminal Action").   In said indictment, HCC was referenced as one of the "violator toy companies", but was not separately charged.

46.     Plaintiff was identified as a victim of Defendants' conduct in the Criminal Action.

47.     All of the Individual Defendants and Corporate Defendants, with the exception of

HCC, pled guilty in the Criminal Action and the Criminal Action is drawing to completion at the time of filing the instant action.

48.     Defendants are not, and have never been, Authorized Licensees or authorized retailers of Authentic Products.  Neither Plaintiff nor any authorized agents of Plaintiff have consented to Defendants' use of Plaintiff's Marks and/or Copyright Works, nor have they consented to Defendants' use of any identical or confusingly similar marks by Defendants. Plaintiff has never authorized Defendants to copy, use, manufacture, import, export, advertise, market, promote, distribute, display, offer for sale or sell any of its Copyright Works or products bearing its Marks and/or Copyright Works.

49.     By the Defendants' dealings in Infringing Products (including, but not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products) as alleged herein, Defendants have violated Plaintiff's exclusive rights in its Marks and Copyright Works, and have used marks, images and/or designs that are confusingly and/or substantially similar to, identical to, and/or constitute counterfeiting and/or infringement of Plaintiff's Marks and Copyright Works, to confuse consumers and aid in the promotion and sales of their Infringing Products.  Defendants' conduct and use began long after Plaintiff's adoption and use of its Marks and Copyright Works.

50.     Prior to and contemporaneous with their unlawful actions alleged herein, Defendants had knowledge of Plaintiff's ownership of its Marks and Copyright Works and of the extraordinary fame and strength of Rovio's Marks and Copyright Works and the incalculable goodwill associated therewith, and in bad faith adopted Plaintiff's Marks and Copyright Works.

51.     Defendants were placed on notice of their counterfeiting and infringing actions, yet they continued to engage in such illegal counterfeiting and infringing actions alleged herein,

knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff's Marks and Copyright Works and Plaintiff's Authentic Products.

52.     Defendants' illegal counterfeiting and infringing actions alleged herein will cause confusion, mistake, and deceive consumers, the public, and the trade with respect to the source or origin of Defendants' Infringing Products, and cause consumers to erroneously believe that such Infringing Products are licensed by, or otherwise associated with Plaintiff, thereby damaging Plaintiff.

53.     In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Plaintiff: infringed Plaintiff's Copyright Works; counterfeited Plaintiff's Marks and Authentic Products; infringed Plaintiff's Marks; committed unfair competition; and unfairly and unjustly profited from such activities at Plaintiff's expense.

54.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

55.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

56.     Rovio is the exclusive owner of the Copyright Works.

57.     Defendants had actual notice of Plaintiff's exclusive rights in and to the Copyright Works.

58.     Defendants did not attempt and failed to obtain Plaintiff's consent or

authorization to use, manufacture, reproduce, copy, display, prepare derivative works, distribute, sell, transfer, rent, perform, and/or market Plaintiff's Authentic Products and/or Copyright Works.

59.    Without permission, Defendants knowingly and intentionally reproduced, copied, and/or displayed Plaintiff's Copyright Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale or selling Infringing Products which bear such Copyright Works or, artwork that is, at a minimum, substantially similar to Plaintiff's Copyright Works.

60.    Defendants' unlawful and willful actions, as alleged herein, constitute infringement of Plaintiff's Copyright Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Copyright Works in violation of 17 U.S.C. § 501(a).

61.    Defendants' knowing and intentional copyright infringement as alleged herein has caused substantial and irreparable harm to Plaintiff and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff for which it has no adequate remedy at law.  Plaintiff is therefore entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages or, in the alternative, statutory damages for willful copyright infringement of up to $150,000 per infringement, and reasonable attorney's fees and costs.

### SECOND CAUSE OF ACTION
### (Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act,
### 15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c))

62.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.    Without Plaintiff's authorization or consent, and with knowledge of Plaintiff's well-known and prior rights in its Marks, and with knowledge that their Counterfeit Products

14

bear counterfeit marks, which are intentional reproductions, copies, and/or colorable imitations of Plaintiff's Marks or display spurious designations that are identical with, or substantially indistinguishable from, Plaintiff's Marks, Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce.

64.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of Plaintiff's Marks to packaging, labels, point-of-purchase images and advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Rovio, thereby making substantial profits and gains to which they are not entitled in law or equity.

65.     Defendants' unauthorized use of Plaintiff's Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intention to unfairly benefit from the incalculable goodwill inherent in Plaintiff's Marks.

66.     Defendants' actions constitute willful counterfeiting of Plaintiff's Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

67.     As a direct and proximate result of Defendants' actions alleged herein, Defendants

have caused substantial and irreparable injury and damage to Plaintiff and its valuable Marks for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause damage to Plaintiff and its valuable Marks in an amount as yet unknown but to be determined at trial.

68.     Based on the foregoing, Plaintiff is entitled to injunctive relief, damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed and reasonable attorney's fees and costs.

**THIRD CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[115 U.S.C. § 1114/Lanham Act § 32(a)]**

69.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

70.     Plaintiff has continuously used its Marks in interstate commerce since at least as early as the Summer of 2010.

71.     Plaintiff, as the owner of all right, title and interest in and to its Marks, has standing to maintain an action for trademark infringement under the Trademark Statute 15 U.S.C. § 1114.

72.     Defendants are now, and were at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Marks.

73.     Defendants did not attempt and failed to obtain consent or authorization from

Plaintiff, as the registered trademark owner of the Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell Authentic Products and/or related products bearing Plaintiff's Marks into the stream of interstate commerce.

74.     Defendants knowingly and intentionally reproduced, copied, and colorably imitated Plaintiff's Marks and applied such reproductions, copies, or colorable imitations to labels, signs, prints, websites, packaging, wrappers, receptacles, and/or advertisements used in commerce, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Defendants' Infringing Products.  Defendants manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Infringing Products bearing, or in connection with, such labels, signs, prints, packages, wrappers, receptacles and/or advertisements.

75.     Defendants' egregious and intentional use of Plaintiff's Marks in commerce and Defendants' sale of items bearing Plaintiff's Marks or colorable imitations of Plaintiff's Marks has caused actual confusion, and is likely to continue to cause further confusion, to cause mistake, and to deceive the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are Plaintiff's Authentic Products, or are otherwise associated with, or authorized by, Rovio.

76.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's exclusive rights and goodwill in the Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

77.     Defendants' continued, knowing and intentional use of Plaintiff's Marks without

Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

78.     As a direct and proximate result of Defendants' unlawful and infringing actions as alleged herein, Plaintiff has suffered substantial and irreparable injury, loss and damage to its business and its rights in and to the Marks and the goodwill associated therewith, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause substantial and irreparable injury, loss and damage to Plaintiff and its rights in and to its Marks and the goodwill associated therewith.

79.     Based on such conduct, Plaintiff is entitled to injunctive relief, damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

## FOURTH CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

80.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

81.     Plaintiff, as the owner of all  common law right, title, and interest in and to the Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

82.     Plaintiff's Marks are inherently distinctive and/or have acquired distinctiveness.

83.     Defendants knowingly and willfully used in commerce product and/or packaging designs that are identical or confusingly or substantially similar to and constitute a reproduction

of Plaintiff's Copyright Works and/or used marks that are identical or confusingly similar to and constitute reproductions of Plaintiff's Marks, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Products are Authentic Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved endorsed or licensed by Plaintiff, and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiff's Marks and brands, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

84.     By manufacturing, importing, exporting and/or assisting and encouraging third parties to manufacture, import, export and by themselves advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, that are identical to, confusingly similar to or colorable imitations of Plaintiff's Authentic Products using marks and artwork identical and/or confusingly or substantially similar to, or which constitute colorable imitations of Plaintiff's Marks and Copyright Works, Defendants have traded off the extensive goodwill of Plaintiff and its Authentic Products to induce and did induce, and intends and will continue to induce customers to purchase its Infringing Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted, and will continue to permit Defendants to make substantial sales and

profits based on the goodwill and reputation of Plaintiff, which it has amassed through its nationwide marketing, advertising, sales and consumer recognition.

85.   Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks and/or artwork that are identical or confusingly or substantially similar to and constitute a reproduction of Plaintiff's Marks and Copyright Works would cause confusion, mistake, or deception among purchasers, users and the public.

86.   On information and belief, Defendants' aforementioned wrongful actions have been  knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its Authentic Products and its Marks.

87.   As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Authentic Products and by depriving Plaintiff of the value of its Marks as  commercial assets, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of Plaintiff's Marks in an amount as yet unknown, but to be determined at trial.

88.   Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Violation of Deceptive Acts and Practices Unlawful)**
**[N.Y. Gen. Bus. Law § 349]**

89.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

90.     Through Defendants' unlawful, unauthorized, and unlicensed use of Plaintiff's Marks and Copyright Works on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling, and/or otherwise dealing in Infringing Products which are identical and/or confusingly similar to Plaintiff's Authentic Products, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

91.     Defendants' aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade or commerce.  Such conduct has deceived and materially misleads, or has a tendency to deceive and materially mislead the consuming public and has injured, and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen, Bus. Law §§ 349.

92.     As a result of Defendants' actions alleged herein, Plaintiff has suffered, and will continue to suffer irreparable harm for which it has no adequate remedy at law.

93.     Pursuant to N.Y. Gen. Bus. Law. § 349(h), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorney's fees.

**SIXTH CAUSE OF ACTION**
**(False Advertising Unlawful)**
**[N.Y. Gen. Bus. Law § 350]**

94.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

95.     Without the authorization of Plaintiff, Defendants have used Plaintiff's Marks and Copyright Works and/or marks, artwork and/or packaging designs that are identical and/or confusingly or substantially similar to Plaintiff's Marks and Copyright Works in connection with the advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, which are identical and/or confusingly similar to Plaintiff's Authentic Products, causing confusion, mistake and deceiving consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

96.     Defendants' aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade or commerce and has injured, and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen, Bus. Law § 350.

97.     As a result of Defendants' actions alleged herein, Plaintiff has suffered, and will continue to suffer irreparable harm for which it has no adequate remedy at law.

98.     Pursuant to N.Y. Gen. Bus. Law. § 350(e), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorney's fees.

### SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

99.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

100.     By manufacturing, importing, exporting and/or assisting and encouraging third

parties to manufacture, import, export and by themselves advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, Defendants have traded off the extensive goodwill of Plaintiff and its Authentic Products to induce and did induce, and will continue to induce customers to purchase its Infringing Products, thereby directly competing with Plaintiff.  Such conduct has permitted, and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which it has amassed through its nationwide marketing, advertising, sales and consumer recognition.

101.    Defendants' advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion, cause mistake and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

102.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products and their continuing advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products would cause confusion, cause mistake or deceive purchasers, users and the public.

103.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff and its competitive position while benefiting Defendant.

104.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been, and will continue to be, deprived of substantial sales of its Authentic Products in an amount as yet unknown but to be determined at trial, and has been, and will continue to be deprived of the value of its Marks as commercial assets, in an amount as yet unknown but to be determined at trial.

105.     Plaintiff has no adequate remedy at law for Defendants' continuing violation Defendants' continuing violation of its rights set forth above.  Plaintiff seeks injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.  Plaintiff seeks exemplary or punitive damages for Defendants' intentional misconduct.

<strong>EIGHTH CAUSE OF ACTION<br>(Unjust Enrichment)<br>[New York Common Law]</strong>

106.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

107.     By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

108.     Defendants' retention of monies gained through its deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

<strong><u>PRAYER FOR RELIEF</u></strong>

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17

U.S.C. § 504(b) in an amount to be proven at trial for willful copyright infringement of Plaintiff's Copyright Works under 17 U.S.C. § 501(a);

B.      In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of Plaintiff's Copyright Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

D.      In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just, which Plaintiff may elect prior to the rendering of final judgment;.

E.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of its federally registered Marks, and such other compensatory damages as the Court determines to be fair and appropriate

pursuant to 15 U.S.C. § 1117(a)(3);

F.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a)(3) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

G.      For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law. § 349(h);

H.      For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law. § 350(e);

I.      For an award of damages to be proven at trial for common law unfair competition;

J.      For an award of damages in an amount to be proven at trial for unjust enrichment;

K.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.    manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing and/or Counterfeit Products;

      ii.   directly or indirectly infringing in any manner any of Plaintiff's copyrights, trademarks or other exclusive rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Marks or Copyright Works;

    iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's copyrights, trademarks or other exclusive rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Marks and Copyright Works to identify any goods or services not authorized by Rovio;

    iv.   using any of Plaintiff's copyrights, trademarks or other exclusive rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Marks and Copyright Works, or any other marks or artwork that are confusingly or substantially similar to Plaintiff's Marks and Copyright Works on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products.

    v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants and Defendants' commercial activities by Plaintiff.

    vi.   engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the advertising and/or dealing in any Infringing Products;

    vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

    viii.   engaging in any other act in derogation of Plaintiff's rights;

    ix.   secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products;

    x.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

    xi.   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above; and

L.    For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's copyrights, trademarks or other

exclusive rights including, without limitation Plaintiff's Marks and Copyright Works, or bear any marks or artwork that are confusingly or substantially similar to Plaintiff's Marks and/or Copyright Works;

M.      For an order of the court requiring that Defendants deliver up for destruction to Plaintiff any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's copyrights, trademarks or other exclusive rights including, without limitation Plaintiff's Marks or Copyright Works, or bear any marks or artwork that are confusingly or substantially similar to Plaintiff's Marks and Copyright Works pursuant to 15 U.S.C. § 1118.

N.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest.

O.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

P.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

Q.      For Plaintiff's reasonable attorney's fees;

R.      For all costs of suit; and

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Dated: May 15, 2015

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY: _____
Ashly E. Sands (AES 7715)
asands@ipcounselors.com
Jason M. Drangel (JMD 7204)
jdrangel@ipcounselors.com
60 East 42nd Street, Suite 2410
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*ROVIO ENTERTAINMENT LTD.*